RUFUS FOREMAN, JR., a Minor, by his Guardian and Next Friend, Charlesia Heard, *et al.*, Plaintiffs-Appellants, v. CONSOLIDATED RAIL CORPORATION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—89—1222

Opinion filed May 28, 1991.

Levy, Leopold & Associates, P.C., of Chicago (David A. Novoselsky and Tammy A. Koester, of counsel), for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Michelle A. Hutchinson, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

JUSTICE COCCIA delivered the opinion of the court:

Plaintiff Rufus Foreman, Jr., a minor, by his guardian Charlesia Heard, and plaintiff Charlesia Heard appeal from a trial court order dismissing two counts of their complaint directed at defendant City of Chicago, pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619). The court entered a finding making this a final order under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). On appeal, plaintiffs contend that the complaint states a valid cause of action for negligence based on the city's failure to fence its property which was adjacent to a railroad track, where the minor plaintiff was injured when he tried to board a moving freight train. Counts directed against defendant Consolidated Rail Corporation remain pending in the trial court.

The complaint alleges that on July 13, 1985, the minor plaintiff, then 11 years old, crossed property owned by the City of Chicago, and entered the railroad property where he tried to climb onto a moving freight train. He fell and was injured, requiring the amputation of his left foot and three toes of his right foot.

Count III of the complaint alleges that the city owned property adjacent to the railroad tracks and that it should have known that children crossed the property to get to the tracks as evidenced by well-worn bicycle and/or foot paths across the city's property leading to the railroad tracks. The complaint alleged that the city had a duty to exercise due care to prevent children from crossing its property; that the city was negligent for failing to keep children from

crossing its property; and that the city was negligent for failing to fence its property.

Count VIII of the complaint alleges that plaintiff Heard, the minor's sister, has incurred expenses as a result of the minor's injuries.

The city filed a section 2—619 motion to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) counts III and VIII, raising as affirmative matter statutory immunities. (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*) The city argued that under both the Tort Immunity Act and common law it had no duty to erect public improvements such as fences.

On April 6, 1989, the trial court granted the city's motion to dismiss after finding that no duty existed to affirmatively put up a fence rather than to maintain it. The court stated that questions "of duty are not always a matter of foreseeability. *** [V]ery often and possibly most often it's [a] question[] of public policy." The court found a heavy burden would be imposed on municipalities if required to put up fences where their properties bordered a railroad "even in the event that they knew or should have known about children going up upon property that leads onto railroad tracks."

■ Under section 2—619 of the Code of Civil Procedure, the court may dismiss an action for failure to state a cause of action and the movant may raise affirmative matter which would avoid the legal effect of or defeat the claim. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) For purposes of a section 2—619 motion, all well-pleaded facts and reasonable inferences therefrom are taken as true. (*Kirby v. Jarrett* (1989), 190 Ill. App. 3d 8, 545 N.E.2d 965.) Conclusions of law or fact unsupported by allegations of specific facts upon which such conclusions rest may not be admitted. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878.) Here, the parties did not submit affidavits or other evidence and the case was decided on the pleadings.

■ Common law negligence consists of a duty owed by defendant to plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.) Plaintiff's complaint must allege facts from which the law will raise a duty, and whether a legal duty exists is first a question of law to be determined by the court. (*Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 562 N.E.2d 967.) Whether a duty exists involves a consideration of foreseeability of possible harm; legal and social policies; the magnitude of the burden of guarding against the injury; and the consequence of placing the bur-

den on defendant. (*Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 562 N.E.2d 967.) The weight accorded each factor depends upon the circumstances of each case. *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 562 N.E.2d 967.

■ Before a duty will be imposed on a party who owns or possesses certain land, it must be shown that the party knows or should know that children frequent the premises and that the cause of the child's injury was a dangerous condition on the premises. (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 564 N.E.2d 778; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 383 N.E.2d 177; *Cope v. Doe* (1984), 102 Ill. 2d 278, 464 N.E.2d 1023; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836; see also Restatement (Second) of Torts, §339 (1965).) Absent these two requirements, the harm to the child will not be deemed sufficiently foreseeable such that the law will find a duty to remedy the unsafe condition. *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 564 N.E.2d 778.

Under Illinois law, municipalities have always had a duty to exercise ordinary care to maintain their property in a reasonably safe condition. *Curtis v. County of Cook*, 98 Ill. 2d 158, 456 N.E.2d 116; *Chicago v. O'Brennan* (1872), 65 Ill. 160.

The complaint here alleges that at the time of the accident:

"[The City's property] was located is [*sic*] approximately 225 [*sic*] South of the South edge of 94th Street, 279 feet East of the East curb of South Woodlawn and 13 feet West of the West curb of South Avalon, and now [*sic*] a small hill.

[M]inors crossed Defendant's property and played upon the moving trains and railroad tracks located adjacent to Defendant's property near the intersection of 94th and Avalon in Chicago, Illinois.

\* \* \*

That on July 13, 1985, and for a long time prior thereto there existed well worn bicycle and/or foot paths across their property leading upon the railroad tracks and the Defendant, by its agents and employees, knew or reasonably should have known that minors crossed its property to play upon the moving trains and railroad tracks located adjacent to Defendant's property near the intersection of 94th and Avalon in Chicago, Illinois and that said minors did not appreciate the inherently dangerous condition created by the moving trains.

That on July 13, 1985, the plaintiff, Rufus Foreman, Jr., crossed Defendant's property at the top of the above-men-

tioned small hill in the area approximately in direct line with the West sidewalk of South Avalon in Chicago, Illinois."

There is only the barest of allegations that the city knew, or should have known, of a condition on its land which was dangerous to minors. The single mention of a path, however, is insufficient for us to find a duty.

Plaintiff relies heavily on *La Salle National Bank v. City of Chicago* (1985), 132 Ill. App. 3d 607, 478 N.E.2d 417, where a nine-year-old boy climbed through a hole in a fence constructed and maintained by the city, and entered the adjacent property owned by the railroad, where he tried to board a moving freight train and was injured, requiring the amputation of one leg and the other foot. The court affirmed a jury verdict for plaintiff and found the city had a duty to repair the hole in the fence, which it had agreed to maintain. That case differs significantly from the present case. In *La Salle*, we specifically noted we were relying on the city's contractual duty to erect and maintain the fence. In addition, it was significant that a fence already existed, that the city had been told several times it was in need of repair, and that the land consisted of a playground.

The court in *La Salle National Bank* relied upon *Leone v. City of Utica* (1979), 414 N.Y.S.2d 412, 66 A.D.2d 463, *aff'd* (1980), 426 N.Y.S.2d 980, 49 N.Y.2d 811, 403 N.E.2d 964, where an eight-year-old was injured while trying to board a moving freight train. The court in *Leone* affirmed a judgment for plaintiff against the city for failure to erect a fence between its property and the railroad. In contrast to the present case, however, the city property in *Leone* consisted of a playground and park located adjacent to the railroad property. Here, there is no such allegation.

Plaintiff also points to *Pellegrini v. Chicago, Rock Island & Pacific R.R. Co.* (1980), 91 Ill. App. 3d 1091, 415 N.E.2d 615, where the court reversed summary judgment entered against the defendant railroad and in favor of the 13-year-old plaintiff injured while trying to board a moving train, where the railroad had failed to erect a fence. That case, however, did not involve a public entity or an adjacent landowner. Moreover, the danger was on defendant's property, not on adjacent property.

Plaintiff also relies on *Maskaliunas v. Chicago & Western Indiana R.R. Co.* (1925), 318 Ill. 142, 149 N.E. 23, where the court affirmed judgment for plaintiff against the defendant railroad for injuries sustained by an eight-year-old who was trying to board a moving train. The court held that the question of whether the fail-

ure to fence the property was a proximate cause of plaintiff's injury was an issue for the jury. In *Maskaliunas*, however, an ordinance required the city to fence the property adjacent to the railroad. Moreover, in that case the unfenced property belonging to defendant consisted of a public playground.

A reading of cases similar to the present case indicates the relevant factors to be considered in determining whether a duty exists on behalf of the adjacent landowner to protect minors from a danger on the adjoining land. For example, the court might look at physical layout and intended use of the public property; any existing physical structures on the public property, such as lighting, abandoned cars, boarded-up buildings or other artificial conditions; the absence of a fence; the existence of a fence in a state of great disrepair; the location of the property in proximity to the railroad tracks and in relation to populated areas, particularly areas which children are known to frequent; the accessibility of the public property itself, and the accessibility of the railroad grounds from the public property; the existence of a worn path between the public property and the railroad property, and any danger upon that path, such as a steep or slippery incline; prior incidents of trespassing in the area where the injury occurred; prior accidents which might give notice of the dangerous condition; warning signs posted on the public land; the age of the child, in view of the commonly known tendency of children to play near railroad tracks, and his prior experience with railroads; and other factors which tend to establish any of the elements of duty discussed above. See generally Annot., *Duty of Landowner to Erect Fence or Other Device to Deter Trespassing Children from Entering Third Person's Property on which Dangerous Condition Exists*, 39 A.L.R.2d 1452 (1955 & Supp. 1990).

■ Despite plaintiff's filing of an original and five amended complaints, he has failed to make even the barest factual allegations regarding these relevant factors. The burden rests with plaintiffs to allege sufficient facts to describe a dangerous condition on defendant's land. (See *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 383 N.E.2d 177.) There is not enough in the complaint here for the court to conclude the condition of defendant's property exposed children to risks greater than those confronted in their daily lives. (See *Corcoran*, 73 Ill. 2d 316, 383 N.E.2d 177.) In regard to the city's land, the pleadings here allege nothing more than the existence of a path. Alone, the path and the absence of a fence do not create a danger to children.

We also note our supreme court's recent opinion in *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 566 N.E.2d 1365, finding the trial court properly dismissed plaintiff's complaint pursuant to a section 2—615 motion, because there is no duty on a landowner to maintain his property in such a manner that his driveway is visible to travelers on an adjacent roadway. In that case, a bicyclist was injured when struck by a truck exiting defendant's driveway. Plaintiff alleged the foliage on defendant's property protected him from seeing the truck. The court stated:

> "In this case, plaintiff is seeking to impose a duty on defendant to maintain his property so as to guard against an injury occurring off defendant's land. Yet, the condition on defendant's land posed no danger to plaintiff, absent the driver's violating his own standard of care. Thus imposition of a duty here would require defendant to 'guard against the negligence of others.' This is a considerably higher burden than guarding against dangers created solely by conditions on his land. Therefore, we find defendant did not have a duty to maintain his property in such a way that plaintiff could see his driveway [from the adjacent roadway]." (*Ziemba*, 142 Ill. 2d at 52-53.)

Similarly, in the present case the dangerous condition existed, and the injury occurred, off of the city's property. The condition of the city's land posed no danger to plaintiff, absent the railroad tracks on the adjacent land. The railroad, if anyone, was in the best position to prevent the injury. See *Ziemba*, 142 Ill. 2d at 53.

We agree with the city's reasoning that "there was no defective structure or dangerous agency on the City's property nor did the City create one on the railroad's property." The fact that the actual injury occurred on property adjacent to defendant's land does not automatically bar recovery. (See *La Salle National Bank*, 132 Ill. App. 3d 607, 478 N.E.2d 417.) If a public entity fails to properly maintain its own property so as to prevent access by children to the adjacent property, it can be liable for having created a hazardous condition on the adjacent property. (*Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 383 N.E.2d 177; *La Salle National Bank v. City of Chicago*, 132 Ill. App. 3d 607, 478 N.E.2d 417; *Predny v. Village of Park Forest* (1988), 164 Ill. App. 3d 688, 518 N.E.2d 1243, citing *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213.) Here, however, there is no allegation of the city's having created a hazardous condition on the railroad's property. See *La Salle National Bank v. City of Chicago*, 132 Ill. App. 3d at 612-

13, citing *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 383 N.E.2d 177, and *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 622-23, 126 N.E.2d 836.

Furthermore, we agree with the trial court that to impose a duty on a municipality to erect fences on all land adjacent to railroad property would be intolerable under the facts which plaintiff has placed before us here. See *Ellison v. Commonwealth Edison Co.* (1953), 351 Ill. App. 58, 113 N.E.2d 471 (court finds it would be an intolerable burden on owners of land adjacent to water to build walls capable of keeping children away from water, noting that proximate cause of injury was water, not the dilapidated wall next to the water on the abutting landowner's property).

We conclude that plaintiff's injuries here were not objectively foreseeable. The complaint alleges insufficient facts to establish a legal duty. Thus, the court properly dismissed the two counts against the city.

■ Our holding is consistent with section 3—102(a) of the Tort Immunity Act, providing that a public entity has a duty to exercise ordinary care to maintain its property in a reasonably safe condition in certain circumstances. The public entity has

"the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom [it] intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proved that it [had] actual or constructive notice of the existence of such a condition ***." (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).)

(See also *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 523 N.E.2d 594; *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 435, 495 N.E.2d 1259 (common law duty of public entity is only to maintain its property in a safe condition).) A municipality is not liable for failing to initially undertake an improvement to a public way in order to prevent injury to travelers. (See, *e.g., Ross v. Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215; *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 502 N.E.2d 385.) Here, there are no allegations of an existing public improvement which the city was required to maintain. Moreover, there are no allegations indicating plaintiff was an "intended and permitted" user of the property.

Our holding is also consistent with the large majority of cases from other jurisdictions which hold that the adjacent landowners

have no duty to fence the property located next to a railroad. See, *e.g., Jones v. United States* (4th Cir. 1957), 241 F.2d 26 (Maryland law) (judgment for defendant government housing project affirmed where two-year-old wanders onto adjacent railroad property; landlord has no duty to guard against dangerous conditions on adjoining property); *Cousins v. Yaeger* (E.D. Pa. 1975), 394 F. Supp. 595 (Pennsylvania law) (summary judgment for defendant adjacent landowner where no evidence shows eight-year-old plaintiff ever crossed defendant's land to get to railroad tracks; but even if he did cross defendant's land, there is no duty to erect a fence around land next to a railroad because danger is on adjacent land); *Gardner v. Consolidated Rail Corp.* (1990), 524 Pa. 445, 573 A.2d 1016 (no common law duty to either erect or repair fence adjacent to railroad property where 11-year-old and 7-year-old were injured; dangerous condition is on third party's land and is not the city's responsibility); *McKinney v. Hartz & Restle Realtors Inc.* (1987), 31 Ohio St. 3d 244, 510 N.E.2d 386 (no duty for adjacent landowner to fence property just because it is next to a railroad; court will not extend duty beyond territorial limits of defendant's property; and moving train is obvious danger to four-year-old plaintiff); *Dugan v. Pennsylvania R.R. Co.* (1956), 387 Pa. 25, 127 A.2d 343, (jury verdict for 11-year-old plaintiff reversed; no duty to fence because danger obvious, and inordinate burden on railroad to use scores of employees to patrol or fence miles of track); *Scarborough v. Lewis* (1986), 359 Pa. Super. 57, 518 A.2d 563 (city has no duty to erect fence, and not liable for danger on adjacent railroad property; however, city liable for failure to maintain fence because it undertook duty when it erected fence); see also *Corcoran v. City of San Mateo* (1953), 122 Cal. App. 2d 355, 265 P.2d 102 (no duty to erect fence where dangerous condition, a ditch, is on abutting property).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

HARTMAN and DiVITO, JJ., concur.