GLENN H. WHITTAKER, JR., Plaintiff-Appellant, v. KEITH HONEGGER
*et al.*, Defendants-Appellees.

Fifth District   No. 5—95—0692

Opinion filed November 7, 1996.

Theodore F. Schwartz and Kenneth R. Schwartz, both of Clayton, Missouri, for appellant.

David C. Laurent, of Reed, Armstrong, Gorman, Coffey, Gilbert & Mudge, of Edwardsville, for appellees.

JUSTICE MAAG delivered the opinion of the court:

Plaintiff, Glenn Whittaker, appeals from a Madison County circuit court order granting defendants' summary judgment motion.

Plaintiff filed this action against defendants, Keith Honegger and Joy Lynn Honegger, seeking recovery for personal injuries sustained when he encountered a patch of loose gravel on the paved public highway in front of defendants' gravel driveway and lost control of his motorcycle. Defendants filed a motion for summary judgment, asserting that as landowners of property adjoining a public highway, defendants owed no duty to motorists to clean or maintain the portion of highway in front of their property, regardless of whether gravel had migrated from their property onto the roadway. The trial court granted defendants' motion. The court specifically found that no legal duty existed on the part of the homeowners. Plaintiff appeals.

We will begin by reviewing the facts before us.

On August 27, 1993, plaintiff was riding his motorcycle down Old Troy Road. As plaintiff approached a curve in the highway near the entrance to defendants' driveway, he lost control of his motorcycle when he encountered a patch of gravel accumulated on the paved road. Plaintiff crashed and sustained injuries. The gravel allegedly was tracked onto the highway over time by vehicles leaving defendants' driveway. Plaintiff alleged that defendants were negligent and breached the duty of ordinary care owed to plaintiff by failing to prevent or remedy a hazardous accumulation of gravel on the roadway. The record fails to disclose how much gravel was present on the highway at the time of the accident.

Plaintiff contends on appeal that the trial court erred in ruling that the defendant homeowners owed plaintiff no duty of care. He argues that because defendants permitted an artificial condition from their property to pose an unreasonable and foreseeable risk to others on the highway, defendants owed a duty to highway users to remove the gravel.

Defendants argue that, even assuming that gravel had migrated onto the roadway and caused plaintiff's injuries, they nevertheless owed no duty to keep the public highway clean. Defendants maintain that they lacked a sufficient relationship to motorists to impose a duty of care; that the risk of injury to highway travelers was not foreseeable; and that the imposition of a duty on owners of land adjacent to public highways to keep their gravel off the road would constitute a "disastrous" burden.

■ Summary judgment should be granted only when the pleadings, depositions, affidavits, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hanks v. Mount Prospect Park District*, 244 Ill. App. 3d 212, 614 N.E.2d 135 (1993). The court must consider all the evidence before it strictly against the movant for summary judgment and liberally in favor of the nonmovant. *Colvin v. Hobart Brothers*, 156 Ill. 2d 166, 620 N.E.2d 375 (1993). In a negligence action, the determination of whether a duty exists is an issue of law to be determined by the court. *Abdo v. Trek Transportation Co.*, 221 Ill. App. 3d 493, 582 N.E.2d 247 (1991); *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 513 N.E.2d 387 (1987). Absent the existence of a duty, a defendant is entitled to summary judgment. *Hanks*, 244 Ill. App. 3d 212, 614 N.E.2d 135; *Crutchfield v. Yellow Cab Co.*, 189 Ill. App. 3d 1091, 545 N.E.2d 961 (1989).

■ Our supreme court has on several occasions addressed the

question of the duty owed by a property owner to those using the adjacent highway. *Abdo*, 221 Ill. App. 3d at 496, 582 N.E.2d at 250; *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 540-41, 582 N.E.2d 108, 111 (1991); *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 45, 566 N.E.2d 1365 (1991). In those instances, the court initially focused on the reasonable foreseeability of the injury in determining whether to impose a duty on the property owner. *Abdo*, 221 Ill. App. 3d at 496, 582 N.E.2d at 250; *Ziemba*, 142 Ill. 2d at 49, 566 N.E.2d at 1367. Accordingly, our inquiry also begins by focusing on the reasonable foreseeability of a highway traveler losing control of his motorcycle when coming in contact with gravel strewn over the paved road.

In considering a landowner's duty toward travelers on adjacent roadways, our analysis must begin by looking to the Restatement (Second) of Torts (1965). Section 368 provides:

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel."

Restatement (Second) of Torts § 368, at 268 (1965).

As our supreme court acknowledged in *Ziemba*, "Section 368 presents the well-established common law rule that a landowner's only duty towards travelers on an adjacent highway is to keep his land free from conditions which are unreasonably dangerous to such travelers who may come into contact with the condition." *Ziemba*, 142 Ill. 2d at 48-49, 566 N.E.2d at 1367.

■ In this case, defendants constructed a gravel driveway on their property adjoining the highway. Defendants do not dispute that the gravel, an artificial condition, migrated off their property and onto the paved highway as a result of vehicles pulling in and out of the driveway. Plaintiff alleges that he came into contact with this artificial condition, which caused him to lose control of his vehicle and suffer injuries. Defendants' contention, that it was not reasonably foreseeable that the gravel scattered on the highway might cause an accident, is unpersuasive.

"Foreseeability of harm, in connection with a duty, is not a magical concept that ignores common sense." *St. Paul Insurance Co. v. Estate of Venute*, 275 Ill. App. 3d 432, 436, 656 N.E.2d 113, 117 (1995). Common sense tells us that the existence of loose gravel on a paved

highway may interfere with a passing motorist's ability to safely control his or her vehicle, especially when, as in the instant case, highway travelers must necessarily apply their brakes to negotiate the curving road ahead. The risk posed by the artificial condition arguably increases for those travelers who, like the plaintiff, encounter the loose gravel while operating a motorcycle.

Defendants' reliance on *Ziemba* for the proposition that no duty is owed by the landowner when the traveler does not stray from the road and make contact with defendants' property is misguided. To suggest, as defendants do here, that a landowner may face liability if a motorist encounters an unreasonably dangerous artificial condition off the edge of the highway on the owner's property, but not if the motorist makes contact with the owner's artificial condition after it has actually crept onto the highway itself, is illogical.

We believe that the principles applicable to snow and ice cases are helpful in understanding the matter at issue. Under the "natural accumulation rule," a landowner in Illinois is generally not liable for injuries when the slip and fall occurred on a surface where the snow and ice accumulation was natural and unaggravated by the landowner. However, the owner may indeed be liable if the ice accumulated because the owner either aggravated a natural condition or engaged in conduct which created a new, unnatural or artificial condition. *Endsley v. Harrisburg Medical Center*, 209 Ill. App. 3d 908, 568 N.E.2d 470 (1991); *Harkins v. System Parking, Inc.*, 186 Ill. App. 3d 869, 542 N.E.2d 921 (1989); *Stiles v. Panorama Lanes, Inc.*, 107 Ill. App. 3d 896, 438 N.E.2d 241 (1982).

Applying these principles to the case at bar, the gravel which accumulated is an unnatural hazard that was created due to the presence and design of defendants' driveway. We believe that a duty arose on the part of the defendants to exercise ordinary care to prevent and/or remedy any dangerous conditions which arose by virtue of the presence of the driveway.

■ Moreover, we find no merit to defendants' contention that imposing a duty on adjacent landowners would lead to an "enormous" burden with "disastrous" consequences. The rule applied in *Ziemba*, to which defendants vigorously adhere, seeks to protect the landowner from a duty to guard against injuries occurring off of his land at the hands of a negligent third party. *Ziemba*, 142 Ill. 2d at 52, 566 N.E.2d at 1369. In *Ziemba*, foliage on the defendant's property obscured the vision of a truck driver pulling onto the highway, resulting in a collision with a passing bicyclist. However, in contrast to *Ziemba*, defendants here created a condition or allowed a condition to develop that was literally on the highway's surface. The gravel posed

a danger to passing motorists, regardless of any third-party conduct. Hence, the imposition of a duty in this case does not put an elevated burden on defendants to guard against the negligence of others. It merely asks defendants to prevent conditions on their land from migrating onto the highway and thereby creating hazards to the motoring public.

■ Finally, the underlying rationale for imposing a duty on the landowner for injuries caused by his artificial conditions is that the landowner is generally in the best position to prevent the injury. This case is no exception. Defendants routinely enter and exit their own property. It follows that defendants are most likely to observe the loose gravel being tracked onto the road and can most effectively eliminate the hazard.

Defendants work hard at trying to carve out a special exception in negligence cases, to allow conditions on private property that migrate onto public ways to be considered absolutely immune from traditional duties imposed by law even if a hazardous condition results. All one needs to do is look at what the consequences would be if defendants' position was adopted. If a landowner's car rolled down his driveway and into the street, by defendants' logic no liability could result if an accident occurred because there would be no duty to prevent the car from rolling into the street and no duty to remove it to clear the street and prevent a collision. If a garden hose was left on and allowed to flow into the street where the water froze, there would no duty to turn off the hose or clear the street. Both such acts would be immune from a civil action by one injured on the street, by defendants' logic, because there is no duty to prevent or correct these obviously hazardous conditions.

The reasoning behind our decision today is hardly novel. Indeed, one can look back to English common law for the proposition that a defendant may be liable for damaging another with a thing or activity on his land which becomes unduly dangerous when located in an inappropriate place or when damage is done to the person or property of another by the activity or thing. *Rylands v. Fletcher*, 3 H.L. 330 (1868) (where a reservoir on defendant's property flooded a mine shaft adjoining the reservoir); W. Keeton, Prosser & Keeton on Torts § 78, at 545-46 (5th ed. 1984); see also *Miller v. Civil Constructors, Inc.*, 272 Ill. App. 3d 263, 265, 651 N.E.2d 239, 241 (1995). We recognize that the instant case is not one involving the imposition of strict liability for inherently dangerous activities as was *Rylands*. Our reliance upon that long-standing English decision is confined to the proposition that liability may result for harm caused by an otherwise harmless condition or activity that becomes hazardous when it

migrates to an inappropriate location. Here, defendants' gravel is "merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard." *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388, 71 L. Ed. 303, 311, 47 S. Ct. 114, 118 (1926).

■ As stated earlier in this opinion, the record fails to reveal how much gravel was on the roadway. If only one pebble was present, we could readily agree that no duty would exist to remove it. But what of a pile of gravel 12 inches deep? Clearly a duty to remove it would arise. How much gravel must be present before the risks posed become unreasonable thus giving rise to a duty? We do not know. That is a mixed question of law and fact. The parties did not help in this analysis. The amount of gravel present was never disclosed to the trial court or this court. As such, the case was not ripe for summary judgment. Only after this information is presented will the trial court know whether the risk of injury caused by the gravel was sufficient to give rise to a duty.

We therefore reverse the judgment of the trial court and remand the cause to the circuit court for further proceedings consistent with this decision.

Reversed and remanded.

HOPKINS, P.J., and CHAPMAN, J., concur.